DELIA CUTLER, ADMINISTRATRIX, vs. THE PUTNAM
LIGHT AND POWER COMPANY.

First Judicial District, Hartford, January Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Upon a hearing in damages after default, it is incumbent upon the
defendant to disprove all the acts of negligence properly alleged
as grounds of recovery, otherwise the plaintiff is entitled to a judg-
ment for such substantial damages as the trial court may find he
has sustained.

The plaintiff's intestate, a lineman in the employ of an electric street
railway company, while working on one of its poles, was killed by
accidentally coming in contact, in some unknown way, with a
sagging and heavily-charged wire of the defendant, an electric
light company, and a span wire of the street-railway company,
thus creating, with his body, a short circuit for the current. The
trial court found, in substance, that the accident was due to the
negligence of the defendant in allowing its high-voltage wires to
remain in dangerous proximity to the span wire, after knowledge
that one of them had already come in contact with that wire,
through which it formed "a ground"; and that the decedent did
not know and had no reason to know or appreciate the peril of his
situation. Held that upon the facts as found it could not be said,
as matter of law, either that the defendant was not negligent as
alleged, or that the decedent was guilty of contributory negligence.

A very high degree of care must be used in the construction, mainte-
nance and operation of a plant which is used for the transmission of
currents of electricity dangerous to life; and therefore an electric
light company, which hangs its wires upon or close to the poles and
wires of an electric street-railway company, is bound to consider
the fact that the railway linemen are required to climb these poles
and come into close proximity to these heavily-charged wires in
the performance of their duties, and to act in view thereof in deter-
mining what precautions it should take to protect them from
injury.

The case of *Judge* v. *Narragansett Electric Ltg. Co.*, 21 R. I. 128, and 23
R. I. 208, distinguished.

Argued January 9th—decided March 5th, 1908.

ACTION to recover damages for personal injuries result-
ing in the death of the plaintiff's intestate, brought to and
heard in damages by the Superior Court in Windham

County, *Roraback, J.;* facts found and judgment rendered for the plaintiff for $5,000, and appeal by the defendant. *No error.*

*Charles E. Searls,* and *Walter F. Angell* of Rhode Island, for the appellant (defendant).

*Donald G. Perkins,* for the appellee (plaintiff).

HALL, J.  In describing the negligent act of the defendant which caused the accident, the complaint avers that on the 6th of July, 1906, the Consolidated Railway Company had constructed through Elm Street in the city of Putnam a street-railway, upon which it was operating cars by electricity conducted through a main feed wire which was supported by span wires extending from the feed wire to poles along the side of the street; that at and for a long time prior to the time of the accident the span wire, attached by an eye-bolt to the pole upon which the plaintiff's intestate, Cutler, was working when injured, had served as a "connection or line of conduction for an electric current through said span wire and thence to said feed wire and so to the ground," and that this fact was known to the defendant; that on said day the defendant had "unlawfully, wrongfully and negligently erected and was maintaining a wire running lengthwise with said street close to said pole and within a few inches of and over said span wire, and had negligently charged and was conducting along said wire a current of electricity of very high voltage and exceedingly dangerous, . . . and had negligently failed to so insulate their said wire at and near said span wire, and had negligently provided said wire with such defective and improper insulation that their said current on their said wire was liable to and did pass from their said wire to and over said span wire, thus charging said span wire with a current of electricity dangerous to human life."

In describing the manner in which the plaintiff's intestate was injured, the complaint alleges, in substance, that

he was a lineman in the employ of the railway company, and that in the course of such employment, on the day above named, he climbed the pole in question to bore a hole in it near the eye-bolt; that he had no knowledge that the defendant's wire was not properly insulated, and that the span wire would conduct a current of electricity to the ground as above stated, but believed that said wire was properly insulated and that the span wire would not conduct a current of electricity to the ground; that while he was engaged in said work, "through the defendant's negligence aforesaid, he received a shock by the electric current of the defendant escaping from their said wire to and through his body to said span wire and its connections," from the effects of which he died in a few minutes.

The following facts appear from the finding : The pole upon which Cutler was working when he was injured belonged to the railway company. Upon it, at a point about fifteen feet from the ground, was an eye-bolt, from which a wire, called a span wire, extended to an insulator, called a breaker-ball, within a few inches of a wire extending lengthwise over the middle of the trolley tracks, called the feed wire, and also extended beyond said breaker-ball to the feed wire. There was also a guy wire extending diagonally from said eye-bolt to the feed wire, and from the feed wire to the next pole. The feed wire conducts the electricity used to propel the cars, carrying a current of 550 volts. The sole purpose of the span and guy wires is to support the feed wire. The span and guy wires are supposed to be dead wires, and harmless. The breaker-ball furnishes a break in the span wire, and is designed to prevent the current of electricity from escaping from the feed wire through the span wire to the pole. Over the span, guy and feed wires, and the breaker-balls, the defendant had no control.

A short distance above the eye-bolt, above referred to, three wires of the defendant, used for power and light, were attached to said pole. One of these carried a current of 2,300 volts, and the others currents of 110 volts. There

were also two other wires of the defendant, carrying currents of 2,300 volts for power and light, and covered with the best obtainable insulating material, which were not attached to said pole of the railway company but to two other poles, about one hundred feet apart, one on each side of said pole of the railway company. These two wires sagged so that one of them, from which Cutler received the current of electricity as it passed the railway company's pole at a distance of about thirty inches from it, was but from seven to eight inches above the span wire before described. As this wire swayed it came still nearer to the railway company's pole, and by the application of a slight force or weight it could be brought into contact with said span wire.

After the accident it was found that a portion of the insulation, for a space of about an inch, on this wire of the defendant, was gone, leaving the wire bare at that point.

About a month before the accident it was discovered that the other of said two swinging wires was in contact with the span wire of the railway company, and that the current from the defendant's wire was passing to the span wire and through it, and through the breaker-ball, to the feed wire, and so to the ground.

It did not appear that the railway company or its employees knew of said fact, but the defendant was immediately notified of it, and so learned that the insulator or breaker-ball in the span wire was not an insulation against the current from the defendant's wire, and that the span wire furnished a ground, or line of conduction for the escape of the current from its wire to the ground.

The defendant thereupon fastened its said wire to said pole of the railway company, but left the other of said two wires suspended just above the span wire as above stated, and it so remained until the time of the accident.

So long as the breaker-ball was not an insulation against the current from the defendant's wires, the span wire, breaker-ball, and feed wire, constituted a good ground from either of the defendant's said three wires in case of a con-

tact of any one of them with the span wire, or in case a person came in contact with either of the defendant's said wires and the uninsulated span wire at the same time.

With the span wire insulated against the current from the defendant's wires, it was safe for a person upon the railway company's said pole to touch either of the defendant's highly charged wires and the span wire at the same time, but with the span wire in the uninsulated condition in which it was at the time of the accident it was dangerous to life to touch either of said wires of the defendant and said span wire at the same time.

The breaker-ball was not designed to insulate against a 2,300 volt current, and such a current coming upon the span wire would either destroy the breaker-ball, or pass through it.

Leaving said wire hanging loose and swaying, so near said pole and span wire, was not a safe or proper construction of the defendant's wires, after its knowledge of the facts above stated. The defendant could easily have strung these wires higher away from the span wire, or have fastened them higher upon the railway company's pole, or upon another pole. The defendant knew that the railway company's employees while working on said pole were liable to touch the defendant's wires and the span wire. After the accident the defendant required the railway company to remove the breaker-ball on the span wire and substitute a different insulator.

In describing the accident the trial court finds that Cutler had climbed the pole to set another eye-bolt. He wore climbers, and a belt attached for safety to another belt about the pole. He did not wear the rubber gloves usually worn by one engaged in such work, and which are some protection. His death was caused by the current from the defendant's swinging wire, before described, passing through his body to the span wire and thence through the feed wire to the ground. The points of contact with the wires were such that rubber gloves would have afforded him no protection. Just how it happened that Cutler came in contact

with the span wire and the swinging wire the trial court was unable to find.

The conclusion of the trial court, as stated in the finding, is that these facts do "not show that the defendant was not negligent substantially as charged in the complaint, nor that the plaintiff's intestate was guilty of contributory negligence."

The defendant first contends that the cause of Cutler's death, as shown by these facts, is essentially different from that alleged in the complaint, and that therefore the act of negligence alleged, and the only one which by the default it assumed the burden of disproving, has been disproved.

This contention is based upon the claim that the act of negligence alleged in the complaint as the cause of the accident, was the negligent failure of the defendant to properly insulate its wire at and near the span wire, and in providing such a defective and insufficient insulation at that point that the current of electricity was liable to pass and did pass from the defendant's wire directly to and over the span wire, thus charging the span wire with a dangerous current; while the facts found show that the real cause of the accident was not a defective insulation of the defendant's wire, but the contact of Cutler's body with the defendant's wire and the grounded span wire at the same time.

But while it is true that the complaint charges the defendant with negligence in failing to properly insulate its own wire, that is not the only act of negligence with which the defendant is charged. The complaint also alleges that, with the defendant's knowledge, the span wire, connected with the pole upon which Cutler was working, had for a long time served to conduct a dangerous current of electricity to the ground, and that the defendant negligently erected and was maintaining a wire "close to said pole and within a few inches of and over said span wire," and was conducting along said wire a current of electricity of very high voltage and exceedingly dangerous. The last paragraph of the complaint, in describing the manner and

cause of Cutler's death, says that " through the defendant's negligence aforesaid, he received an electric shock by the electric current of the defendant escaping from their said wire ' to and through his body to said span wire. .... " These averments sufficiently describe the cause of Cutler's death and the manner in which it occurred, as shown by the facts found, notwithstanding it appears that it was not caused by any failure of the defendant to properly insulate its own wires.

. The defendant next urges that the facts found furnish no sufficient ground for the conclusion of the trial court that the defendant failed to sustain the burden, assumed by its voluntary default, of either disproving the alleged negligence of the defendant, or proving the contributory negligence of the plaintiff's intestate.

To sustain this claim we must hold that the facts found show as a matter of law, either that the defendant was not negligent, as alleged, or that Cutler was guilty of contributory negligence.

. We find nothing in the facts found which is necessarily inconsistent with the conclusion of the trial court that the defendant failed to establish either of the facts which by its default it undertook to prove.

. The exercise of that degree of care which the law terms ordinary care, required the use of very great care by the defendant in the construction, maintenance and operation of its appliances for conducting its currents of electricity of high voltage. *McAdam* v. *Central Ry. & Elec. Co.*, 67 Conn. 445, 447, 35 Atl. 341. In determining what precautions it should take against danger to human life by possible contact with its highly-charged wires, it was bound to recognize the rights of the railway company to maintain and use its poles and wires, and to consider the fact that the railway company's linemen were required, in the performance of their duties, to climb these poles for the purpose of maintaining and repairing the railway company's wires. *Nelson* v. *Branford L. & W. Co.*, 75 Conn. 548, 551, 54 Atl. 303. The defendant knowingly allowed its highly-

charged wire, the current from which caused Cutler's death, to hang so near to the pole upon which Cutler was working and to the span wire of the railway company attached to it, that the railway linemen, while working upon the pole, were liable to accidentally come in contact with it. The defendant learned some weeks before the accident that one of these two sagging wires had come in contact with the span wire, at this pole, and that either from the insufficiency of such a breaker-ball as that used upon the span wire or from its defective condition, it did not furnish an insulation against the current from defendant's wire, and that the span wire became grounded when in contact with the defendant's wire. The trial court has pointed out how the danger of such contact with these wires by linemen might have been removed or lessened by the defendant. The trial court was justified in concluding that a proper construction or maintenance of the defendant's wires at this point had not been shown.

It is claimed that it is a necessary inference from the facts found that the deceased was guilty of contributory negligence. We cannot adopt that view. The proof did not show exactly how the contact occurred. There was no evidence that Cutler knew of the contact of the defendant's wire and the span wire, a few weeks before the accident, or that he knew of the defective condition or insufficiency of the breaker-ball, or that the span wire was a grounded wire, either when in direct contact with the defendant's highly-charged wires, or when connected with them by his body. The question as to proof of contributory negligence decided in the case of *Judge* v. *Narragansett Electric Ltg. Co.*, 21 R. I. 128, 42 Atl. 507, and 23 R. I. 208, 49 Atl. 961, cited by the defendant, is essentially different from that presented in the case at bar. The court decided in that case that, with the burden of proving due care resting upon the plaintiff, facts quite similar to those in the present case, showing that a lineman, while working upon a pole, in some way not shown by the evidence, either became grounded while in contact with a heavily-charged wire, or created a

short circuit for the current through his body, was not sufficient proof that the deceased was not guilty of contributory negligence. If in that case it could properly be said that there was no evidence upon the question of due care by the deceased, it necessarily followed that the plaintiff, upon whom the burden of proving due care rested, failed. If there is none in the present case, the defendant, upon whom the burden of proving contributory negligence rested, failed. By the default, due care upon the part of the deceased stood an admitted fact until disproved by the defendant. There is no presumption of contributory negligence arising from the mere fact that the plaintiff's intestate, while working on the pole, in some unknown way, either became grounded, while in contact with a heavily-charged wire, or created a short circuit for the current through his body, that will take the place of the proof of contributory negligence required under our practice to be presented by the defendant, in a hearing in damages after a default. The allegations of the complaint, which are prima facie admitted by the default, are practically that the accident happened, as it was proved to have happened, in one of these two ways just stated, and that it so happened while the deceased was in the exercise of due care.

The requests for corrections of the finding are denied. There is no error.

In this opinion the other judges concurred.